**FILED**
**Jan 19, 2023**
**02:38 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **DENNIS JENKINS,** | ) | **Docket No.: 2021-07-0221** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 24389-2022** |
| **TYSON FOODS, INC.,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Robert Durham** |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

This Court held an Expedited Hearing on January 5, 2023. Mr. Jenkins sought an order requiring Tyson to provide benefits for injuries he allegedly sustained after being struck by a forklift at work. The Court denies his requests because he did not present sufficient evidence to show he is likely to prove at trial that he suffered a specific incident causing an injury at work or that a physician believes the injury arose primarily out of employment.

### History of Claim

Mr. Jenkins alleged that on April 7, 2022, he was struck by a forklift as it backed out of a door at Tyson's warehouse. He said that the collision caused injuries to his hands, wrists, and left shoulder.

The evidence included a video of the alleged incident. The video shows a forklift backing through a door and beginning to turn right, and Mr. Jenkins, with his head turned, walks toward the forklift from the left. As he approaches the forklift, he turns his head and stops walking. With his body leaning forward, he pushes against the side of the forklift with the back of his right forearm and possibly touches it with his left hand. He does not otherwise touch the forklift. Mr. Jenkins then takes a few steps forward as the forklift turns away from him.

In his deposition, Mr. Jenkins asserted that the video did not show the whole accident. He said that it at least partially depicted the April 7 incident on which he based his claim. He testified differently at the hearing. He said that, after consideration, he

1

realized the video could not have been of the incident where he was hurt, since on that occasion the forklift backed directly into him with enough pressure that it caused "tattoos" on the back of his hands. When pressed, he said that he collided with a forklift on two separate occasions, and the video did not capture the one where he was injured.

Mr. Jenkins reported the accident that same day. According to the incident report, the "jack driver came out the door and hit me on my left side," causing injuries to his left arm and both hands. Tyson provided a panel of doctors, and Mr. Jenkins chose Dr. Peter Gardner.

Dr. Gardner saw Mr. Jenkins for authorized care once. Mr. Jenkins complained of pain in both forearms and wrists. X-rays were normal. Dr. Gardner diagnosed bilateral forearm contusions and wrist sprains. He released Mr. Jenkins to return to work with no restrictions and no follow-up appointment. Afterward, Tyson denied the claim.

In June, Mr. Jenkins sought unauthorized care with Dr. Gardner for cervical and left shoulder pain that he stated extended to his hands. Dr. Gardner ordered physical therapy for "cervical paraspinal muscle tissue" and placed lifting restrictions. However, he also said that Mr. Jenkins's symptoms were not due to a work-related injury and cautioned him against seeking narcotic pain medication.

Later in June, Mr. Jenkins visited a primary care clinic for bilateral hand pain, and a few days after that he went to the emergency room complaining of left hand and wrist pain. The ER physician diagnosed tendinitis and de Quervain's syndrome. In July, the clinic ordered hand x-rays, which Mr. Jenkins never underwent.

In September, Mr. Jenkins returned to the primary care clinic. He said he had lost feeling in his hands and needed insulin. The note recorded that Mr. Jenkins had been to the emergency room "multiple times" over the past week, and providers noticed "drug seeking tendencies." Afterward, Mr. Jenkins returned to the emergency room complaining of hand pain and swelling due to an "injury a week ago." He was diagnosed with bilateral hand contusions and wrist sprains as well as a left shoulder sprain.

At his deposition, Mr. Jenkins said several times that he never had problems with his hands or shoulders before the April 7 incident. However, according to records submitted as exhibits, Mr. Jenkins saw Dr. Kenneth Nord in 2018 for left-wrist pain he reportedly suffered from a work-related fall.[1] After several visits, Dr. Nord noted that Mr. Jenkins did not have any interest in getting better but only wanted narcotics and to be off work. He eventually released Mr. Jenkins from care.

[1] Mr. Jenkins also said in his deposition that he never had a previous workers' compensation claim. After being confronted with records, he admitted to several, including a slip and fall in 2018 and allegedly being run over by a car while working at a restaurant. At the hearing, Mr. Jenkins attempted to explain that he told Tyson's counsel earlier that he "had dealings" with workers' compensation before.

Additionally, in the fall of 2021, Mr. Jenkins treated for bilateral shoulder and neck pain that he attributed to a car accident. The doctor ordered an EMG/NCS study that revealed moderate severe median neuropathy at both wrists with no cervical radiculopathy. Mr. Jenkins also sought treatment at the same primary care clinic in January 2022 for back and left-shoulder pain that he said was due to loading heavy boxes at work. He returned in March for bilateral shoulder pain and denied any known injury.

When confronted at the hearing with these records, Mr. Jenkins testified that the symptoms were not the same as he suffers now.

In November, counsel for Tyson wrote a letter to Dr. Garland asking his opinion on causation. After summarizing Mr. Jenkins's medical history and quoting the workers' compensation statute regarding causation, Tyson's counsel asked Dr. Garland several questions. Dr. Garland replied that he did not believe Mr. Jenkins's alleged April 7 incident primarily caused him injury or contributed to any pre-existing conditions. He also agreed that the incident did not cause permanent impairment and that any need for future treatment would be primarily due to pre-existing conditions. Dr. Garland added a note that Mr. Jenkins suffered "no definitive injury" on April 7, 2022.

## Findings of Fact and Conclusions of Law

Mr. Jenkins must present evidence that he is likely to prove at trial that his employment caused an "injury" as that term is defined under Tennessee Workers' Compensation Law. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). To prevail, Mr. Jenkins must prove an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(14)(A) (2022).

Mr. Jenkins's ability to meet that burden must overcome several hurdles. First, the accident as depicted in the video did not likely cause him any injury. The video raises doubt that an accident occurred at all. Mr. Jenkins ran into the side of the forklift, and it does not appear that he did more than brush it with his right forearm. His assertions that the video did not show the whole accident or that he had a separate incident where a forklift ran into him that was the actual source of his injury are unpersuasive.

Second, Mr. Jenkins's medical records illustrate problems with his upper extremities well before he began working for Tyson and mention some drug-seeking behavior. Given the record, the Court finds that Mr. Jenkins's assertions that he suffered a work-related accident to his upper extremities on April 7 are not credible.

Third, to prove causation, he must do so to a "reasonable degree of medical certainty," which requires an expert medical opinion. Tenn. Code Ann. § 50-6-102(14)(C).

3

Dr. Garland provided the only medical opinion as to causation, and he did not believe that Mr. Jenkins suffered an injury primarily related to his employment. He went on to say that he believed Mr. Jenkins suffered "no definitive injury" due to the alleged forklift incident. Thus, the Court finds that Mr. Jenkins did not offer an expert medical opinion establishing causation.

For these reasons, the Court holds that Mr. Jenkins is not likely to prove causation at trial.

IT IS, THEREFORE, ORDERED THAT:

1.  Mr. Jenkins's request for benefits is denied.

2.  This case is set for a Scheduling Hearing on **February 24, 2023, at 9:30 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

**ENTERED on January 19, 2023.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Tyson's Exhibit List
5. Tyson's Pre-Hearing Brief

Exhibits:
1. Medical Records Submitted by Mr. Jenkins
2. Late Filed Medical Records submitted by Mr. Jenkins
3. Late Filed Medical Records from Dr. Gardner
4. Video
5. Team Member Statement
6. Form C-42 Panel of Physicians
7. Collective Medical Records Submitted by Tyson
8. Wage Statement
9. Mr. Jenkins's deposition

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on January 19, 2023.

| Name | Certified Mail | Via Email | Email Address |
|------|---------------|-----------|---------------|
| Dennis Jenkins | X | | 1008 Cynthia Circle Jackson, Tennessee 38305 |
| Jared Renfroe | | X | jrenfroe@spicerfirm.com |

_____
**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

5

**FILED**
**Dec 27, 2022**
**02:27 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT GRAY

| | | |
|---|---|---|
| **SALVADOR ENRIQUEZ,** | ) | **Docket No. 2020-02-0318** |
| **Employee,** | ) | |
| **v.** | ) | |
| **DEFENDER SERVICES, INC.,** | ) | |
| **Employer,** | ) | **State File No. 1013152019** |
| **And** | ) | |
| **AMERICAN CASUALTY** | ) | |
| **COMPANY OF READING,** | ) | |
| **PENNSYLVANIA,** | ) | **Judge Brian K. Addington** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on December 15, 2022, on whether Mr. Enriquez is entitled to past temporary disability benefits. Defender argued that Mr. Enriquez does not qualify for these benefits because the treating physician placed him at maximum medical improvement on June 9, 2020. For the reasons below, Mr. Enriquez is entitled to the requested benefits.

### History of Claim

On December 19, 2019, Mr. Enriquez injured his left knee when he fell at work. Defender authorized Dr. Larry Waldrop to surgically repair Mr. Enriquez's knee ligament. On June 9, 2020, Dr. Waldrop placed him at maximum medical improvement, but he noted he would likely require knee replacement surgery in the future and assigned light-duty restrictions.[1]

Mr. Enriquez had further symptoms, and on July 14, he saw Dr. Waldrop for worsening pain. That day he ordered an MRI and removed Mr. Enriquez from work. On November 11, Dr. Waldrop reviewed the MRI results and modified the restrictions to light

---

[1] Defender paid Mr. Enriquez $584.15 in weekly temporary benefits until that date.

1

duty-lifting no more than five pounds. Mr. Enriquez's knee pain continued over the next several months despite multiple injections.

Dr. Waldrop completely removed Mr. Enriquez from work on July 19, 2022, and Defender restarted temporary total disability benefits. Dr. Waldrop performed a court-ordered left-knee replacement for Mr. Enriquez in August. Mr. Enriquez testified that he experienced less pain and could ambulate better after his knee replacement.

On September 1, Dr. Waldrop responded to a questionnaire, marking "no" to the question, "was Mr. Enriquez at Maximum Medical Improvement on June 21, 2020." Dr. Waldrop answered "yes" when asked if Mr. Enriquez was restricted to light duty from November 11, 2020, until July 19, 2022.

Mr. Enriquez testified that he attempted three times to find work within his restrictions. He said that he has not worked since June 20, 2020, because of his knee pain and restrictions. At the hearing, he called two local employers, who testified that Mr. Enriquez requested a construction job from them; however, neither had available work within his restrictions. Mr. Enriquez recounted that he tried operating a string trimmer but could not physically do it.[2]

Based on Dr. Waldrop's September 1 opinion, Mr. Enriquez asked for an accrued award of temporary disability benefits from June 9, 2020, to July 18, 2022. This represents temporary partial benefits for June 9, 2020, through July 13; temporary total benefits for July 14 through November 11; and temporary partial benefits beginning November 12, 2020, through July 18, 2022.

Defender argued that it did not owe temporary benefits because Mr. Enriquez reached maximum medical improvement and was released to light-duty work in June 2020. It further asserted that Mr. Enriquez has not proven his period of disability, nor that he was unable to work light duty. Lastly, it argued that receiving treatment after the authorized physician placed him at maximum medical improvement did not rescind that status.

## Findings of Fact and Conclusions of Law

At an Expedited hearing, Mr. Enriquez must show he would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2022). The only issue is whether Mr. Enriquez was entitled to temporary disability benefits.[3]

---

[2] The parties did not introduce evidence of what, if any, work Mr. Enriquez could perform for Defender.
[3] During the second expedited hearing, the undersigned held that Mr. Enriquez came forward with sufficient evidence to show he was likely to succeed at a final hearing in showing the need for his total knee replacement was primarily due to his December 19, 2019 injury.

To be eligible for temporary benefits, Mr. Enriquez must prove: "(1) that he became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and his inability to work; and (3) the duration of the period of disability." *Hibbitts v. Kim Royal d/b/a Royal Guttering,* 2021 TN Wrk. Comp. App. Bd. LEXIS 10, at *6 (Mar. 23, 2021).

In a previous expedited hearing, the Court found Mr. Enriquez's condition primarily related to his work injury. Further, Dr. Waldrop never released Mr. Enriquez, and his status has remained at sedentary or no work during the period of disability in question. Additionally, Mr. Enriquez offered testimony of two local employers who stated they did not have construction positions to accommodate his restrictions.

As to Defender's assertion that he worked during the alleged period of disability, Mr. Enriquez testified that he attempted to perform minor yard and construction work but was unable to do so, and Defender presented no proof that Mr. Enriquez earned any income during the period in question. The Court finds that these unsuccessful attempts to work bolster Dr. Waldrop's opinion concerning the work restrictions. Mr. Enriquez should not be penalized for attempting to find work.

Additionally, the Court rejects Defender's argument that Mr. Enriquez was at maximum medical improvement. Although Dr. Waldrop initially documented maximum medical improvement and rated Mr. Enriquez's injury, he removed Mr. Enriquez from work less than one month later. Further, the parties were in active dispute over the knee replacement surgery, which the Court eventually ordered. With Mr. Enriquez's continued treatment, knee replacement, and Dr. Waldrop's new September 1, 2022, opinion, the Court holds that Mr. Enriquez had not reached maximum medical improvement in June 2020.

Considering the findings above, the Court holds that Mr. Enriquez is likely to prevail at a hearing on the merits in showing his entitlement to the temporary benefits he seeks.

**IT IS THEREFORE ORDERED** as follows:

1. Defender shall pay Mr. Enriquez temporary partial disability benefits from June 9, 2020, through July 13, which represents five weeks at the weekly rate of $584.15 totaling $2,920.75.

2. Defender shall pay Mr. Enriquez temporary total disability benefits from July 14, 2020, through November 11, or seventeen weeks and four days at the weekly rate of $584.15 totaling $10,097.54.

3

3. Defender shall pay Mr. Enriquez temporary partial disability for the period of November 12, 2020, to July 18, 2022, at the weekly rate of $584.15 totaling eighty-six weeks and three days or $50,487.25

4. Mr. Beiger is entitled to a fee of up to 20% from Mr. Enriquez from the total amount ordered.

5. This case is set for a Status Hearing on **February 14, 2023, at 2:00 p.m. Eastern** time. The parties must dial **855-543-5044** to participate in the hearing.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The insurer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED December 27, 2022.**


/s/ Brian K. Addington
_____
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**


**APPENDIX**

Exhibits:
1. Affidavit of Salvador Enriquez
2. Wage Statement
3. Affidavit of Employer
4. Employment Record
5. Designated Medical Records
6. Medical Records-Appalachian Orthopaedics (9/6/2022-11/15/2022)
7. Medical Records- Physical Therapy Services, PA
8. Dr. William Hovis IME, Medical Records and Correspondence
9. Dr. William Hovis Deposition Transcript
10. Transcript of Expedited Hearing (June 30, 2021)

4

11. Transcript of Expedited Hearing (March 31, 2022)
12. Deposition Transcript of Dr. Larry Waldrop
13. Social Security Card (for identification only)
14. California ID (for identification only)

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice (2/26/2021)
3. Dispute Certification Notice (10/8/2022)
4. Expedited Hearing Order (4/12/2022)
5. Expedited Hearing Order (7/7/2021)
6. Employee's Position Statement (7/25/2022)
7. Hearing Request
8. Defendant's Expedited Hearing Brief
9. Claimant's Brief in Support
10. Claimant Salvador Enriquez's Exhibit List for the Expedited Hearing
11. Claimant Salvador Enriquez's Witness List for the Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent on December 27, 2022.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Daniel Bieger, Employee's Attorney | | | X | dan@biegerlaw.com paige@biegerlaw.com |
| J. Brent Moore, Employer's Attorney | | | X | bmoore@ortalekelley.com ccaruso@ortalekelley.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

5



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____       ☐ Motion Order filed on _____

☐ Compensation Order filed on_____       ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*